1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   FEDERAL DEPOSIT INSURANCE               CASE NO. C13-737 MJP
     CORPORATION AS RECEIVER FOR
11   FRONTIER BANK,                          ORDER DENYING MOTION TO
                                             DISMISS
12                   Plaintiff,

13         v.

14   MICHAEL J. CLEMENTZ, et al.,

15                   Defendants.

16

17         This matter is before the Court on Defendants' motion to dismiss for failure to state a

18   claim, pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 36.) The Court considered the motion, the

19   response (Dkt. No. 43), reply (Dkt. No. 47), the Complaint (Dkt. No. 1), and all documents

20   which the Court found proper for judicial notice. (Dkt. No 54.) The Court DENIES the motion to

21   dismiss.

22                                        **Background**

23         Plaintiff Federal Deposit Insurance Corporation ("FDIC-R") filed its Complaint in this

24   Court seeking to recover damages from Defendants, former Officers and Directors of Frontier

1   Bank, in its capacity as Receiver for Frontier Bank ("Frontier"). (Dkt. No. 1 at 2.) Plaintiff seeks

2   to recover damages from the former Officers and Non-Officer Directors ("NODs") in excess of

3   46 million dollars. (Id.)  Plaintiff alleges the Officer Defendants breached their fiduciary duties

4   to Frontier and were negligent and grossly negligent by recommending, presenting for approval

5   and/or approving in violation of Frontier's Loan Policy and sound lending practices, at least 11

6   loans between March 2007 and April 2008. (Id.) Plaintiff alleges the NODs are likewise liable.

7   (Id.) Plaintiff notes it does not seek to collect on the outstanding loans, but to collect damages

8   including but not limited to lost profits, lost operating capital, and lost investment opportunities.

9   (Id. at 3.)

10          Frontier was formed in 1978 and was headquartered in Everett, Washington. (Dkt. No. 1

11   at 6.) Beginning in 2003, Plaintiff alleges Frontier instituted an aggressive growth strategy

12   focused on increased commercial real estate lending ("CRE") and on acquisition, development

13   and construction loans ("ADC"). (Id.) Between 2005 and 2007, Frontier's total real estate loans

14   increased by over 58%. (Id.) As of April 2009, Plaintiff says Frontier was the largest commercial

15   bank headquartered in Western Washington with approximately $3.6 billion in assets and

16   approximately $3.1 billion in deposits. (Id.) On April 30, 2010, Frontier was closed and the

17   FDIC was appointed as Receiver. (Id.)

18          Plaintiff alleges during the time period in which Defendants approved the loans at issue

19   here, they knew or should have known Frontier's lending was concentrated in CRE and ADC

20   loans, and causing Frontier's over-exposure to large losses from a decline in the real estate

21   market. (Dkt. No. 1 at 7.) Plaintiff claims during meetings in 2006, Defendants specifically

22   acknowledged the housing market presented a risk to Frontier's stability, and Frontier's loan

23   growth continued to exceed the increase in deposits. (Id.) The Board of Directors considered

24

1  whether to "close down the loan growth spigot" but instead continued to approve an increase in

2  the Bank's loan loss reserve and to approve more CRE and ADC loans. (Id.)

3       Plaintiff alleges Frontier's Officers also had actual and constructive notice of warnings in

4  banking and financial publications about impending decline in the real estate market. (Dkt. No. 1

5  at 7-8.) Plaintiff argues the Officers saw a presentation on the potential decline in the housing

6  market and received a special letter from market researchers cautioning them to take steps to

7  protect their business in February and March 2006. (Id. at 8.) Plaintiff further alleges in 2007,

8  Frontier conducted another Directors Planning Session where the highlighted concern was

9  Frontier's concentration in real estate. (Id.) Plaintiff asserts the Directors were dismissive of the

10 concerns and continued to present for approval more ADC loans. (Id.) Plaintiff claims

11 Defendants knew Frontier was highly exposed in CRE and ADC loans that would be negatively

12 affected by a decline in the real estate market, and thus knew or should have known they needed

13 to exercise a heightened degree of care in loan approval, but repeatedly failed to exercise the

14 necessary care and follow their own policies. (Id. at 8-9.)

15      Frontier's loan policy provided guidelines and standards for the underwriting, reviewing,

16 and approving of various loan categories. (Dkt. No. 1 at 9.)  Plaintiff alleges all of the loans at

17 issue in this case are categorized under the Loan Policy as "Construction Loans" which include

18 loans for residential and/or commercial real estate development, loans for residential and/or

19 commercial real estate acquisition, and working capital loans for real estate acquisition and/or

20 development. (Id.)

21      For all loans, the Loan Policy required consideration of (1) borrower and/or guarantor

22 creditworthiness; (2) loan repayment ability of the borrow and/or guarantor, and the primary and

23 secondary repayment sources; (3) purpose of the loan, including that the loan must be sound and

24

1  not speculative; (4) nature and value of the collateral, properly margined; (5) economic

2  conditions and trends in the area, industry, and firm; and (5) legal and regulatory requirements.

3  (Dkt. No. 1 at 9-10.) The Loan Policy contemplates there will be exceptions to the various

4  lending guidelines, and discusses the approval process for loans in excess of lending limits. (Dkt.

5  No. 37-1 at 13.) As a precondition for granting any real estate loan, the Loan Policy required at

6  least one written appraisal of any property pledged as collateral meeting specific preparation

7  requirements. (Dkt. No 1 at 11.) Additionally, Plaintiff argues the Policy required Officers and

8  Directors to monitor and evaluate the real estate market conditions in the bank's lending area.

9  (Id. at 12.)

10       For Construction Loans, Plaintiff alleges the Loan Policy required consideration of

11  several factors, such as risks the borrower would be unable to complete the project and the

12  sufficiency of collateral, and also required several types of documentation including cost

13  estimates, an appraisal report with feasibility and marketability evaluation, and a construction

14  loan agreement, among other documents. (Id. at 13.) Before an approval decision could be made,

15  Plaintiff says, the Loan Policy required an appraisal with special emphasis on feasibility,

16  marketability, construction costs, and adequacy of the plans and specifications. (Id.)

17       Plaintiff alleges Frontier a had tiered loan approval process at all relevant times, with the

18  primary lending authority vested with the Bank Director's Loan Committee ("DLC"), which

19  could approve loans up to the Bank's lending limit. (Dkt. No. 1 at 13.)  The DLC was comprised

20  of the Chief Executive Officer ("CEO") of Frontier and six other Directors. (Id.) Four members

21  of the DLC were required for a quorum, and the CEO's vote was necessary to approve any loan

22  presented to the DLC. (Id.) Some of the DLC's lending authority was delegated to the Executive

23  Loan Committee ("ELC"), which had lending authority of $10 million. (Id. at 14.) The ELC was

24

1   comprised of the CEO, President, Chief Operating Officer ("COO"), President of the Real Estate

2   Division, and Senior Branch Administrator. (Id.) The ELC required a majority vote for loan

3   approval and any loan submitted required the CEO's vote to be funded. (Id.) For the DLC or

4   ELC to approve a loan, they generally received a loan memo and the standardized personal and

5   business financial statements for the borrowers and guarantors. (Id.) The ELC and DLC also had

6   access to loan files containing the collateral appraisal, appraisal review, borrower and/or

7   guarantor tax returns, and other information. (Id.)

8          Plaintiff alleges Defendants, as Officers and/or Directors of Frontier, had duties to follow

9   Frontier's Loan Policy and to exercise due care in recommending, presenting for approval,

10  and/or approving the Loans at issue in its Complaint. (Dkt. No. 1 at 14.)  Plaintiff asserts

11  between March 2007 and April 2008, Defendants breached these duties by causing Frontier to

12  approve loans that would not have been approved had the Defendants complied with the Loan

13  Policy, followed prudent, safe, and sound lending practices, and conducted and/or required the

14  necessary due diligence. (Id.) Plaintiff brings three causes of action against Defendants related to

15  11 loans made between March 2007 and April 2008, including (1) as to all Defendants, breach of

16  fiduciary duty; (2) as to all Defendants, gross negligence; and (3) as to Officer Defendants

17  DeKlyen, J. Dickenson, Dorsey, Ries, Robinson, and Ryan, negligence. (Id. at 46-47.)

18         Defendants move to dismiss all of Plaintiff's claims at the pleading stage. (Dkt. No. 36.)

19  Defendants make five arguments for dismissal. Defendants argue (1) the business judgment rule

20  bars Plaintiff's negligence claims (Id. at 14-20); (2) the Complaint fails to plausibly allege

21  Defendants breached any duty of care to Frontier because Defendants acted with the requisite

22  care under Washington law (Id. at 20-37); (3) state law bars Plaintiff's gross negligence claim

23  against the Director Defendants because it allows corporations to limit or eliminate personal

24

1  liability for directors in their articles of incorporation, and Frontier had such a limiting provision

2  (Id. at 37-38); (4) the Complaint fails to allege proximate cause; and (5) the fiduciary duty claims

3  are inadequate because they do not allege facts supporting a breach of loyalty, and they are

4  duplicative of the negligence claims (Id. at 40-41.).

5                                      **Analysis**

6  I.       Standard for Dismissal for Failure to State a Claim

7        The Federal Rules require a plaintiff to plead "a short and plain statement of the claim

8  showing that [it] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a

9  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

10 plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

11 Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual

12 content that allows the court to draw the reasonable inference that the defendant is liable for the

13 conduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 545) (further noting that

14 plausibility lies somewhere between allegations that are "merely consistent" with liability and a

15 "probability requirement"). In determining plausibility, the Court accepts all facts in the

16 Complaint as true. Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir.

17 2009). The Court need not accept as true any legal conclusions put forth by the plaintiff. Iqbal,

18 556 U.S. at 678.

19 II.      Business Judgment Rule

20        Washington courts apply the business judgment rule to business decisions, and "infrequently

21 reverse a business decision." Lane v. City of Seattle, 164 Wn.2d 875, 882 (Wash. 2008). In a

22 recently issued order, the Honorable Judge John C. Coughenour evaluated the application of the

23 business judgment rule to a situation very similar to the one presented here. Fed. Dep. Ins. Corp.

24

1  v. Hanson, et al., Case No. 2:13-cv-0671-JCC, Dkt. No. 37 (W.D. Wash. 2013).  In Hanson,

2  Judge Coughenour reasoned the business judgment rule did not bar plaintiff's claims because

3  under any interpretation of Washington law on the issue, where a plaintiff claims defendants

4  failed to consider necessary information to make decisions or knew of and disregarded relevant

5  information, the business judgment rule does not protect defendants from a negligence claim. Id.

6  at 4. Judge Coughenour further noted there is no formulation of the business judgment rule

7  protecting a defendant from a claim of gross negligence. Id.

8      The Court agrees with the analysis in Hanson and adopts it here.  While the Washington

9  Supreme Court has used superficially different language at different times to articulate the

10  business judgment rule, Defendants urge the use of the language provided in Scott v. Trans-

11  System, Inc., which says "Under the 'business judgment rule,' corporate management is

12  immunized from liability in a corporate transaction where (1) the decision to undertake the

13  transaction is within the power of the corporation and the authority of management, and (2) there

14  is a reasonable basis to indicate that the transaction was made in good faith." 148 Wn.2d 701,

15  709 (Wash. 2003).

16      The Washington Court has also said in describing the application of the business judgment

17  rule, "[r]easonable care is required [and] good faith is insufficient because a director must also

18  act with such care as a reasonably prudent person in a like position would use under similar

19  circumstances." Riss v. Angel, 934 P.2d 669, 681 (Wash. 1997). This Court agrees with the

20  analysis in Hanson finding a full reading of Scott reveals it was not rejecting a reasonableness

21  standard for the business judgment rule, but was instead including a good faith requirement.

22  2:13-cv-0671-JCC, Dkt. No. 37 at 4. The rule remains, "directors are not immunizsed from

23

24

ORDER DENYING MOTION TO DISMISS- 7

1    liability when they fail to exercise proper care, skill and diligence." <u>Fielder v. Sterling Park</u>

2    <u>Homeowners Ass'n</u>, 914 F. Supp. 2d 1222, 1228 (W.D. Wash. 2012).

3         Here, Plaintiff alleges Defendants failed to comply with Frontier's Loan Policy, failed to

4    follow "prudent, safe, and sound lending practice," and did not conduct or require "the necessary

5    due diligence, including basic loan review procedures." (Dkt. No. 1 at 14.) Defendants argue the

6    "FDIC may take issue with the quality of the evaluation, or the outcome of the decisions made

7    after such review, but the Complaint is devoid of any allegation that such investigation failed to

8    take place, as is required to overcome the business judgment rule's presumption. (Dkt. No. 36 at

9    19.) This is overreaching. If, as here, a plaintiff acknowledges some review was done but it was

10   inadequate or ignored to the point where defendants failed to act with "proper care, skill and

11   diligence" the business judgment rule will not bar the claims.  <u>Fielder</u>, 914 F. Supp. 2d at 1128.

12   Defendants' motion to dismiss on this point is denied.

13        III.    Plausibility of Facts Alleging Breach

14        Defendants spend much of their motion to dismiss arguing the merits of Plaintiff's claims.

15   Defendants assert where an officer's or director's conduct complies with the "general standard"

16   of the Business Corporation Act, he or she is not liable, and the Complaint fails to adequately

17   allege any violation of the applicable standards of care. (Dkt. No. 36 at 20.) Defendants argue

18   that under the Washington law, corporate officers and directors must operate with the duty of

19   care an "ordinarily prudent person in a like position would exercise under similar circumstances"

20   and if this standard is adhered to there is no liability. RCW 23B.08.300(1)(b) (directors);

21   23B.08.240(1)(b) (officers). Defendants ask the Court to examine the Loan Memos, the Loan

22   Policy, and other judicially noticed documents to demonstrate "each of [the] eleven loans was

23   issued after careful analysis of the economy, borrower, collateral, and prospects for repayment-

24

1    the very factors the FDIC itself identifies as critical to sound lending." (Dkt. No. 36 at 22.)

2    Defendants make arguments specific to each loan, asking the Court to determine if Plaintiff

3    makes a plausible claim Defendants were negligent, grossly negligent or breached their fiduciary

4    duties if they reviewed the documents at issue. (Id.)

5        While the Court has taken judicial notice of several of the documents at issue, the Court will

6    not and does not find the contents of these documents make Plaintiff's claims implausible. On a

7    motion to dismiss, the Court "will not draw inferences in favor of Defendants from the judicially

8    noticeable facts." McGuire v. Dendreon Corp., 2008 U.S. Dist. LEXIS 65436, *12 (W.D. Wash.

9    Apr. 18, 2008). Without delving into the specific items reviewed for each loan, the Court does

10   not find it appropriate to draw conclusions at the pleading stage as to whether Defendants'

11   review of these documents makes approval of the loans inherently legally sufficient such that

12   Plaintiff's claims would be implausible. Based on the Complaint, recognizing the judicially

13   noticeable documents, and drawing all inferences in favor of Plaintiff, Plaintiff meets the

14   pleading standard of plausibility. The Court denies the motion to dismiss on these grounds.

15       IV.     State Law and Insulation from Liability in Articles of Incorporation

16       Defendants argue Frontier's Articles of Incorporation foreclose the FDIC-R's pursuit of

17   monetary damages against Director Defendants for claims of negligence and gross negligence, as

18   allowed by Washington state law. (Dkt. No. 36 at 37.) Plaintiff argues Frontier's insulating

19   provision, which provides "No director of the Corporation shall be liable to the Corporation or its

20   shareholders for monetary damages . . .," does not apply to the FDIC in its capacity as Receiver

21   for Frontier because it is neither the Corporation nor a shareholder. (Dkt. No. 43 at 29.)

22       Plaintiff relies heavily on FDIC v. Skow, in which the Northern District of Georgia refused

23   to apply insulating provisions in articles of incorporation to the FDIC-R. 2012 U.S. Dist. 153604,

24

1   *16. Defendants argue Skow is distinguishable because the court was applying Georgia law

2   which protected a director from personal liability to its shareholders, but did not expand the

3   limitation to the bank or corporation, where the Washington statute does expand the liability

4   limitation to the bank or corporation. Id. at *10, (Dkt. No. 47 at 2.).

5       The Georgia law applied in Skow is really two statutes, with one referencing the other. The

6   Georgia law specific to financial institutions, O.C.G.A. § 7-1-493(e) states, in relevant part, "a

7   bank or trust company may provide through an amendment to its articles of incorporation for the

8   elimination or limitation of personal liability of a director to the shareholders of the bank or trust

9   company to the same extent as a business corporation incorporated under the provision of

10  Chapter 2 of Title 14 . . . [.]" The referenced law, also cited in Skow, says in relevant part that a

11  corporation may include in its articles of incorporation "[a] provision eliminating or limiting the

12  liability of a director to the corporation or its shareholders for monetary damages for any action

13  taken, or failure to take any action . . ." with certain exceptions. O.C.G.A. § 14-2-202(b)(4). The

14  Court in Skow does acknowledge the difference in the two statutes, and notes the statute

15  applicable to the lawsuit, which involved a bank, did not expand the limitation on liability to

16  suits by the bank itself. 2012 U.S. Dist. 153604 at *12.

17      The applicable Washington law states, "[t]he articles of incorporation may contain provisions

18  not inconsistent with law that eliminate or limit the personal liability of a director to the

19  corporation or its shareholders for monetary damages for conduct as a director . . . [.]" R.C.W.

20  23B.08.320. Defendants are correct the Washington law echoes Georgia corporate law, but not

21  the Georgia financial industry law applied in Skow. Skow specifically acknowledges it is

22  analyzing the question of whether the FDIC-R is prevented from suing directors by insulating

23  provisions preventing a derivative action by shareholders as opposed to an insulating provision

24

ORDER DENYING MOTION TO DISMISS- 10

1    protecting against an action by the bank itself. 2012 U.S. Dist. 153604 at *12-13. Taking the

2    plain meaning of the Georgia financial industry statute, the Skow court found the bank's

3    insulating provisions eliminated the directors' liability to the shareholders. Id. at *13.

4        Skow relies on an Eleventh Circuit case holding, "[w]hen the FDIC is appointed as receiver,

5    it steps into the shoes of the failed institution and takes possession of both the assets and the

6    liabilities." Id. at *13, citing Vernon v. F.D.I.C.  981 F.2d 1230, 1234 (11th Cir. 1993). However,

7    the language in Skow further indicates even as the FDIC-R stands in the shoes of the failed

8    institution, it represents more than just the institution. Skow notes, citing Eleventh Circuit

9    authority, "the 'FDIC is primarily serving as an instrument of the banking industry' when it

10   becomes receiver for a failed bank." 2012 U.S. Dist. 153604 at *15, quoting FDIC v. Harrison,

11   735 F.2d 408, 413 (1984).This Court has also upheld the notion the FDIC-R is not an exact

12   stand-in for the bank itself. In Branning v. CNA Ins. Cos., this Court held the predecessor to the

13   FDIC did not "merely stand in the shoes" of the failed institution at issue, but represented

14   "depositors, shareholders, creditors and the federal insurance fund as well as the failed

15   institution." 721 F. Supp. 1180, 1184 (W.D. Wash. 1989.) Although the issue in Branning was

16   different than the issue here, the language is instructive.

17       While Defendants attempt to distinguish the law analyzed above, they provide no authority

18   showing insulating provisions in articles of incorporation as allowed by Washington law have

19   been applied against the FDIC in its receiver capacity, and the Court finds no such authority. The

20   Court does not find Plaintiff's claims are barred by Frontier's Articles of Incorporation or by

21   Washington law, and denies the motion to dismiss on those grounds.

22

23

24

1  V.  Proximate Cause

2  A general summary of Plaintiff's Complaint is Defendants' actions and/or inactions caused

3  loans to be improperly issued, and those loans defaulted, causing harm to Frontier. Defendants

4  argue Plaintiff's claims fail because while the FDIC "offers its belief that each loan should not

5  have been made, it fails to explain how Defendants' alleged misconduct caused the loans to

6  default." (Dkt. No. 47 at 23, emphasis original.) As authority, Defendants cite Fagerlie v. HSBS

7  Bank, NA, 2013 U.S. Dist. LEXIS 65900, *12 (W.D. Wash. May 8, 2013). Fagerlie is a

8  foreclosure case dealing with proximate cause in the context of a Consumer Protection Act

9  claim. Id. The case sets forth the rule in Washington for proximate cause: "[T]he term

10  'proximate cause' means a cause which in direct sequence unbroken by any superseding cause,

11  produces the injury [or] event complained of and without which such injury [or] event would not

12  have happened." Id., quoting Schnall v. AT&T Wireless Servs., Inc., 171 Wn.2d. 260, 278

13  (2011).

14  The FDIC-R successfully alleges proximate cause in its Complaint. Plaintiff alleges

15  Defendants' wrongful actions and/or inactions caused loans to be wrongfully made which were

16  destined to fail, causing damages to Frontier. (Dkt. No. 1 at 14-15.) Other courts have held in

17  cases involving the FDIC-R causation was adequately pleaded in similar circumstances, where

18  loan making deficiencies and violations caused losses. Fed. Deposit Ins. Co. v. Faigin, 2013 U.S.

19  Dist. LEXIS 94899, *29 (C.D. Cal. July 28, 2013).  The FDIC-R properly alleges Defendants

20  actions are part of the "unbroken chain" of events leading to the damages alleged. The motion to

21  dismiss is denied on these grounds.

22  VI.  Fiduciary Duty Claims

23

24

ORDER DENYING MOTION TO DISMISS- 12

1    Finally, Defendants assert Plaintiff's claims for breach of fiduciary duty are inadequate on

2    their face and/or should be stricken as duplicative. Defendants argue the fiduciary duty claims

3    are inadequate because Plaintiff fails to plead facts establishing a breach of the duty of loyalty,

4    which Defendants argue the fiduciary duty claim is premised on. (Dkt. No. 36 at 40.)

5    The elements of a breach of fiduciary duty claim are (1) the existence of a fiduciary duty; (2)

6    breach of the fiduciary duty; (3) damages; and (4) causation. Micro Enhance. v. Coopers &

7    Lybrand, 110 Wn. App. 412, 433-34 (2002). Defendants make no argument (with the exception

8    of the causation argument dismissed above) these allegations are not made in the Complaint. The

9    Court rejects the argument the fiduciary duty claims are not properly plead.

10   The argument of duplicative pleading is likewise rejected. Defendants assert Washington law

11   counsels dismissal of duplicative claims, characterized as claims based on the same facts that

12   support another claim. (Dkt. No. 36 at 41), citing Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th

13   Cir. 2007.) In Swartz, the Ninth Circuit found dismissal appropriate of a declaratory judgment

14   claim which requested a declaration of liability for damages sought for the plaintiff's other

15   causes of action. 476 F.3d at 766. The issue addressed in Swartz is distinguishable from the

16   circumstances here.  Instead, the issue here is nearly identical to that addressed by the Central

17   District of California in the Faigin case, discussed above. Faigin distinguished Swartz, noting in

18   that case "the issue was not only the repetition of the same facts and same plea for damages, but

19   rather the derivative nature of the cause of action, which depends on the other causes of action to

20   succeed at all." 2013 U.S. Dist. LEXIS 94899 at *30.

21   Federal Rule of Civil Procedure 8(d)(2) allows a plaintiff to make alternative statements,

22   embodying the liberal pleading policy of the Federal Rules. Id. While Plaintiff's fiduciary duty

23

24

1  claims may be premised on similar facts as Plaintiff's other claims, they are not duplicative and

2  are properly brought. The motion to dismiss is denied on this point.

3                                  **Conclusion**

4          Finding none of Defendants' arguments persuasive and finding Plaintiff's Complaint

5  adequately pled, the court DENIES Defendants' motion to dismiss for failure to state a claim.

6

7          The clerk is ordered to provide copies of this order to all counsel.

8          Dated this 12th day of December, 2013.

9

10

11         _____
           Marsha J. Pechman
12         Chief United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING MOTION TO DISMISS- 14